UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 30, 2015
```

K.C. and V.C., individually and on behalf of
their son Eric C. ("E.C."), a minor; Y.D.,
individually and on behalf of her son Oscar B.
("O.B."), a minor; O.G. and A.G.,
individually and on behalf of their daughter
Tyler G. ("T.G."), a minor; and L.R. and S.R.,
individually and on behalf of their son Robert
R. ("R.R."),

                    Plaintiffs,

       - against -

NEW YORK CITY EDUCATION
DEPARTMENT; JOHN B. KING, JR., in his
representative role as Commissioner of
Education for the New York State Education
Department; the OFFICE OF STATE
REVIEW, and JUSTYN BATES and
STEPHANIE DEYOE, in their representative
roles as New York State Review Officers,

                 Defendants.

**MEMORANDUM
OPINION & ORDER**

13 Civ. 5910 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Plaintiffs K.C., V.C., Y.D., O.G., A.G., L.R. and S.R. are parents of four children

– E.C., O.B., T.G., and R.R. – who suffer from various developmental and learning disabilities.

Defendants are the New York State Education Department; the Education Department's

Commissioner, John B. King, Jr.; the Office of State Review ("OSR"); Justyn Bates – a New

York State Review Officer ("SRO"); and former SRO Stephanie Deyoe.  Plaintiffs seek relief

pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq.,

as well as New York State and New York City implementing regulations:  Article 89 of the New

York State Education Law, New York Education Law § 4401 et seq., and N.Y. Comp. Codes R.

& Regs. ("NYCRR") tit. 8 §§ 200 et seq.

In connection with administrative proceedings brought by Plaintiffs, the Complaint alleges that State Review Officers have not decided appeals from decisions rendered by Impartial Hearing Officers ("IHOs") in a timely fashion.  Plaintiffs claim that the State Defendants are violating time limits imposed by IDEA and its implementing regulations. The Complaint seeks, inter alia, declaratory and injunctive relief, and an award of attorneys' fees and costs.  (Cmplt. (Dkt. No. 1) ¶¶ 4-7)

After Plaintiffs filed the Complaint, the SROs issued decisions in all appeals relating to Plaintiffs.  The decisions were unfavorable to three of the Plaintiff children, and favorable in part to as to one child.  (E.C. SRO Decision (Dkt. No. 35) Ex. C at 35; O.B. SRO Decision (Dkt. No. 35) Ex. D at 30; T.G. SRO Decision (Dkt. No. 35) Ex. E at 27; R.R. SRO Decision (Dkt. No. 35) Ex. F at 39)[1]

Plaintiffs now seek an award of attorneys' fees and costs, arguing that they are "prevailing parties" within the meaning of IDEA, 20 U.S.C. §§ 1401, 1514(i)(3)(B) and 34 C.F.R. § 300.517 et seq.  Plaintiffs assert that Defendants have provided them with the principal relief they sought in this action:  the issuance of decisions by the SROs.  In the alternative, Plaintiffs seek judgment on the pleadings and a ruling that (1) Plaintiffs are prevailing parties in this action; (2) Plaintiffs are entitled to an award of reasonable attorneys' fees and costs; (3) Defendants violated IDEA by not issuing timely decisions concerning appeals regarding Plaintiffs' claims; and (4) requires Defendants to comply with time limits set forth in the IDEA and its implementing regulations in addressing future claims by Plaintiffs.  Defendants have cross-moved for judgment on the pleadings.  For the reasons stated below, Plaintiffs' motion for

---

[1]  Page citations are to documents as they appear on this Court's ECF system.

an award of attorneys' fees and costs will be denied; Plaintiffs' motion for judgment on the

pleadings will be denied; and Defendants' motion for judgment on the pleadings will be granted.

## BACKGROUND

I.  **STATUTORY BACKGROUND**

"Under the IDEA, states receiving federal funds are required to provide 'all

children with disabilities' a 'free appropriate public education.'"[2] Gagliardo v. Arlington Cent.

Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting 20 U.S.C. § 1412(a)(1)(A)); see also

Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998).  A "free appropriate

public education" ("FAPE") "must include 'special education and related services' tailored to

meet the unique needs of a particular child, . . . and be 'reasonably calculated to enable the child

to receive educational benefits. . . .'"  Walczak, 142 F.3d at 122 (quoting Bd. of Educ. v.

Rowley, 458 U.S. 176, 207 (1982)) (internal citations omitted).

Special education and related services under the IDEA are provided by a school

district pursuant to an annual individualized education program ("IEP").  Walczak, 142 F.3d at

122; see also 20 U.S.C. § 1414(d).  In New York, local committees on special education ("CSE")

are responsible for developing appropriate IEPs.  Walczak, 142 F.3d at 123.  "In developing a

particular child's IEP, a CSE is required to consider four factors:  (1) academic achievement and

learning characteristics, (2) social development, (3) physical development, and (4) managerial or

behavioral needs."  Gagliardo, 489 F.3d at 107-08 (citing NYCRR tit. 8 § 200.1(ww)(3)(i)).

---

[2] "Congress amended the IDEA by enacting the Individuals with Disabilities Education
Improvement Act of 2004 ("IDEIA"), Pub.L. No. 108-446, 118 Stat. 2647, which took effect on
July 1, 2005.  Courts, however, continue to refer to the amended Act as the IDEA."  M.M. ex rel.
J.M. v. New York City Dep't of Educ., No. 09 Civ. 5236 (PAC), 2010 WL 2985477, at *12 n.3
(S.D.N.Y. July 27, 2010).  All citations to IDEA in this opinion reflect the statute as amended by
the IDEIA.

"The IDEA provides a variety of 'procedural safeguards with respect to the provision of [FAPE]' by school districts." Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist., 386 F.3d 158, 160 (2d Cir. 2004) supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist., 112 F. App'x 89 (2d Cir. 2004) (quoting 20 U.S.C. § 1415(a)). "In compliance with these requirements, New York State has implemented a 'two-tier system of administrative review.'" Id. (quoting Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 197 (2d Cir. 2002)). "The first tier entitles parents dissatisfied with a proposed IEP to have it reviewed before an impartial hearing officer ('IHO') appointed by the board of education." Id. (citing N.Y. Educ. Law § 4404(1); 20 U.S.C. § 1415(f)). Moreover, "[a]ny parent who thinks that the school district is failing to provide his or her child a FAPE may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district." Reyes ex rel. R.P. v. New York City Dep't of Educ., 760 F.3d 211, 215 (2d Cir. 2014) (citing 20 U.S.C. § 1412(a)(10)(C)(ii)). "To seek tuition reimbursement, a parent must file a 'due-process complaint,' which entitles him or her to an 'impartial due process hearing' before an IHO." Id. (citing 20 U.S.C. § 1415(b)(6), (f); N.Y. Educ. Law § 4404(1)).

"Either party may appeal the IHO's decision to a [State Review Officer], N.Y. Educ. Law § 4404(2), whose determination may in turn be appealed by bringing a civil action in either state or federal court[.]" Id. at 215 (citing N.Y. Educ. Law § 4404(3)(a); 20 U.S.C. § 1415(i)(2)(A)); see also Mackey, 386 F.3d at 160 ("'[P]arties aggrieved by the outcome of the due process hearing may' proceed to the second tier, 'an appeal before a state review officer ('SRO').'" (quoting Murphy, 297 F.3d at 197; citing N.Y. Educ. Law § 4404(2); 20 U.S.C. § 1415(g))).

"Under New York law, '[t]he [SRO] must ensure that, not later than 30 days after the receipt of a request for a review, a final decision is reached and a copy of the written decision . . . is mailed to each of the parties.'" R.B. v. New York City Dep't of Educ., 15 F. Supp. 3d 421, 432 (S.D.N.Y. 2014), aff'd sub nom. R.B. ex rel. D.B. v. New York City Dep't of Educ., 603 F. App'x 36 (2d Cir. 2015) (citing NYCRR tit. 8 § 200.5(k)(2); 34 C.F.R. § 300.515(b)); see also N.Y. Educ. Law § 4410(7)(d) ("A state review officer of the education department shall review the decision of the [IHO] . . . and render a decision no later than thirty days after the decision of such hearing officer.").

## II.   FACTS

### A.   The Defendants

Defendant New York State Education Department ("NYSED") is the "State Educational Agency" for New York, as defined in 20 U.S.C. § 1401(32)[3] and 34 C.F.R. § 300.41. (Cmplt. (Dkt. No. 1) ¶ 20)[4] Defendant John B. King is NYSED's Commissioner. (Id. ¶ 21) NYSED and its Commissioner are responsible for ensuring that local educational agencies within New York comply with federal and state mandates. (Id. ¶ 22) Defendant Office of State Review ("OSR") is a component of the NYSED. (Id. ¶ 23) State Review Officers working for OSR issue decisions on appeals from IHO decisions throughout New York. (Id.) Defendant Justyn Bates is an SRO[5] who is "employed and compensated by NYSED and/or the OSR." (Id. ¶

---

[3] "The term 'State educational agency' means the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools, or, if there is no such officer or agency, an officer or agency designated by the Governor or by State law." 20 U.S.C. § 1401(32); see also 34 C.F.R. § 300.41.

[4] Unless otherwise indicated, all citations to the docket refer to K.C., et al. v. NYSED, et al., No. 13 Civ. 5910 (PGG).

[5] "State Review Officer means an employee of the State Education Department designated by the commissioner to conduct impartial State-level review pursuant to Education Law, section

24)  Defendant Stephanie Deyoe was an SRO until August 2, 2013.  (Id. ¶ 25; Answer (Dkt. No.

5) ¶ 25)

### B.      The Plaintiffs

#### 1.      E.C.'s Background

Plaintiffs K.C. and V.C. are the parents of E.C., a child with multiple disabilities,

including "pervasive development disorder-not otherwise specified," an autism spectrum

disorder.  (Cmplt. (Dkt. No. 1) ¶ 12)  E.C. lives in the New York City school district.  (Id.)

Public schools in New York City are operated by the New York City Department of Education

("DOE").  (Id. ¶ 16)  During the 2010-11 school year, the DOE did not timely develop an IEP for

E.C., or offer E.C. a placement.  (Id. ¶ 44)  Accordingly, E.C. attended the Rebecca School, a

private special education school for children with disabilities.  (Id.)  Pursuant to a settlement with

E.C.'s parents, DOE paid for E.C.'s tuition at the Rebecca School for the 2010-11 school year.

(Id.; see also id. ¶ 45)

E.C.'s parents allege that the DOE did not offer their son a FAPE for the 2011-12

school year.  (Id. ¶ 44)  As a result, E.C.'s parents notified the DOE that they intended to

unilaterally re-enroll E.C. at the Rebecca School, and would seek tuition reimbursement.  (Id.)

On July 7, 2011, E.C.'s parents initiated an administrative proceeding against the DOE.  (Id. ¶

45)  E.C.'s parents argued that the DOE had not offered E.C. a FAPE for the 2011-12 school

year, and sought reimbursement for tuition at the Rebecca School.  (Id. (citing 20 U.S.C. §

14156; NYCRR tit. 8 § 200.5 (i))

---

4404(2) of the determination of an impartial hearing officer in a hearing related to the
identification, evaluation, program or placement of a student with a disability."  N.Y. Comp.
Codes R. & Regs. ("N.Y.C.R.R.") tit. 8, § 279.1; see also Cmplt. (Dkt. No. 1) ¶ 26.

After a nine or ten day hearing (see id. ¶ 46; E.C. SRO Decision (Dkt. No. 35) Ex.

C at 5), on July 27, 2012, the IHO issued a decision in favor of E.C.'s parents, and awarded them

partial reimbursement for tuition at the Rebecca School for the 2011-12 school year. (Cmplt.

(Dkt. No. 1) ¶ 46; E.C. SRO Decision (Dkt. No. 35) Ex. C at 6)

The DOE appealed the IHO's decision to the OSR. The matter was fully briefed

as of October 16, 2012. (Id. ¶ 47) As of the date the Complaint was filed, the SRO had not

issued a decision; the decision was 228 days late. (Id. ¶ 49)

### 2.    O.B.'s Background

Y.D. is the mother of O.B., a child who suffers from Fragile X syndrome and

autism. (Id. ¶¶ 13, 50) O.B. and his mother live in the New York City school district. (Id. ¶ 16)

Y.D. alleges that the DOE did not timely develop an IEP for O.B., or offer him a placement, for

the 2010-11 school year. (Id. ¶ 51) Accordingly, O.B. attended the Rebecca School. (Id.) The

DOE and O.B.'s mother entered into a settlement concerning the 2010-11 school year, in which

the DOE agreed to pay O.B.'s tuition at the Rebecca School. (Id.; see also id. ¶ 52)

O.B.'s mother alleges that the DOE did not offer O.B. a FAPE for the 2011-12

school year. (Id. ¶ 51) As a result, O.B.'s mother notified the DOE that she intended to

unilaterally re-enroll O.B. in the Rebecca School, and would seek reimbursement for tuition.

(Id.) On July 1, 2011, O.B.'s mother initiated an administrative proceeding against the DOE for

its alleged failure to offer O.B. a FAPE. She sought reimbursement for O.B.'s tuition at the

Rebecca School for the 2011-12 school year. (Id. ¶ 52)

After a nine or ten day hearing (see id. ¶ 53; O.B. SRO Decision (Dkt. No. 35)

Ex. D at 5), on April 2, 2012, the IHO issued a decision in favor of O.B.'s mother, requiring the

DOE to pay O.B.'s tuition at the Rebecca School for the 2011-12 school year.  (Cmplt. (Dkt. No. 1) ¶ 53; O.B. SRO Decision (Dkt. No. 35) Ex. D at 6)

The DOE appealed the IHO's decision.  The matter was fully briefed as of June 12, 2012.  (Id. ¶ 54)  As of the date the Complaint was filed, the SRO had not issued a decision; the decision was 404 days late.  (Id. ¶ 56)

### 3.    T.G.'s Background

O.G. and A.G. are the parents of T.G., a child with intellectual disability/mental retardation, auditory processing and language disorders, and fine motor dyspraxia.  (Id. ¶¶ 14, 57)  O.G., A.G. and T.G. live in the New York City school district.  (Id. ¶ 16)  T.G.'s parents allege that the DOE did not offer T.G. a FAPE for the 2010-11 and 2011-12 school years.  (Id. ¶ 58)  Moreover, T.G.'s parents allege that the DOE "failed [in] its duties pursuant to their 'Child Find' obligations and failed to evaluate and classify T.G. as a child with a disability early in her schooling."  (Id.)  As a result, T.G.'s parents notified the DOE that they intended to unilaterally enroll T.G. at the Cooke Center for Learning, a private special education school for children with disabilities.  (Id.)  On January 25, 2012, T.G.'s parents initiated an administrative proceeding against the DOE for its alleged failure to offer T.G. a FAPE.  (Id. ¶ 59)  They sought tuition reimbursement for the 2011-12 school year and compensatory services for the years that T.G. did not have special education services in school.  (Id.)

After a six or seven-day hearing, on September 14, 2012, the IHO issued a decision partially in favor of T.G.'s parents.  (Id. ¶ 60; T.G. SRO Decision (Dkt. No. 35) Ex. E at 5)  T.G.'s parents obtained an award of compensatory services, but their claim for tuition reimbursement was denied.  (Cmplt. (Dkt. No. 1) ¶ 60; see also T.G. SRO Decision (Dkt. No. 35) Ex. D at 7)

T.G.'s parents appealed the IHO's decision. (Id.)  The matter was fully briefed as of December 7, 2012. (Id. ¶ 61)  As of the date that the Complaint was filed, the SRO had not issued a decision; the decision was 215 days late. (Id. ¶ 63)

### 4.    R.R.'s Background

L.R. and S.R. are the parents of R.R., a child who has autism, attention deficit-hyperactivity disorder, and mild mental retardation. (Id. ¶ 15)  R.R. and his parents live in the Massapequa Union Free School District (the "Massapequa UFSD"). (Id. ¶ 16)  R.R.'s parents allege that the Massapequa UFSD did not offer R.R. a FAPE for the 2009-10 and 2010-11 school years. (Id. ¶ 65)  As a result, R.R.'s parents notified the Massapequa UFSD that they intended to unilaterally enroll R.R. at the New York Institute of Technology-VIP program – a private special education program for children with disabilities – and would seek tuition reimbursement. (Id. ¶¶ 65, 66)  On October 22, 2010, R.R.'s parents initiated an administrative proceeding against the Massapequa UFSD for its alleged failure to offer a FAPE to R.R. (Id. ¶ 66)  They sought funding for the tuition at the New York Institute of Technology-VIP program. (Id. (citing 20 U.S.C. § 1415; NYCRR tit. 8 § 200.5(i)))

After a twenty-one or twenty-two day hearing (see id. ¶ 67; R.R. SRO Decision (Dkt. No. 35) Ex. F at 8), on June 18, 2012, the IHO issued a decision finding that the school district had offered a FAPE to R.R. for the 2009-10 school year, but had not offered a FAPE to R.R. for the 2010-11 school year. (R.R. SRO Decision (Dkt. No. 35-6) at 8)  The IHO ordered the school district to reimburse R.R.'s parents for the cost of tuition at the New York Institute of Technology-VIP program for the 2010-11 school year. (Cmplt. (Dkt. No. 1) ¶ 67; R.R. SRO Decision (Dkt. No. 35-6) at 10)

The Massapequa UFSD appealed the IHO's decision. (Id.) The matter was fully briefed as of August 30, 2012. (Id. ¶ 68) As of the date that the Complaint was filed, the SRO had not issued a decision; the decision was 324 days late. (Id. ¶ 70)

### C.     SRO Backlog

In an April 5, 2013 letter to the OSR, Plaintiffs inquired about the status of their cases before the SROs. (Id. ¶ 71; Oct. 1, 2014 Bartoldus Decl. (Dkt. No. 28), Ex. A)

In an April 9, 2013 letter to Plaintiffs' counsel, SRO Bates wrote the following:

> A preliminary review of . . . each of the parties' disputes in these proceedings has been conducted. Unfortunately, due to circumstances beyond my control as a State Review Officer, the Officer of State Review has received an extraordinarily high influx of appeals and is experiencing a backlog of cases. We are reviewing appeals by issuing decisions as closely as possible in the order in which they are due.

(Id. ¶ 73; see also Oct. 1, 2014 Bartoldus Decl. (Dkt. No. 28), Ex. B)

## III.     THE COMPLAINT

The Complaint was filed on August 21, 2013, and seeks the following relief:

(1) a declaration that Plaintiffs have exhausted their administrative remedies;

(2) a declaration that Defendants are grossly out of compliance with 34 C.F.R. § 300.515(b) and New York Education Law § 410(7)(d) and in derogation of their duties under the law;

(3) an order directing Commissioner King to develop procedures to monitor the decision process by the SRO and ensure that they comply with the 30-day requirement;

(4) an order directing the Defendants to comply with the 30-day requirement to issue a decision;

(5) an order directing the Defendants to issue all decisions that are overdue within 10 days, or summarily affirm such decisions;

(6) an order directing that the Defendants be subjected to a 60-month period of monitoring, and the appointment of a monitor who is not a New York State employee;

(7) a declaration that the NYSED has waived or abandoned its statutory opportunity to decide appeals within a 30-day period;

(8) an order vacating, as null and void, any forthcoming SRO decisions in the E.C., O.B., T.G., and R.R. matters;

(9) an order affirming the IHO's decisions and declaring that Plaintiffs are "substantially prevailing parties" who are entitled to seek an award of attorneys' fees and costs;

(10) an order directing Defendants to pay prejudgment interest in all cases where the SRO does not issue a timely decision and parents have been awarded money damages;

(11) an order directing Defendants to pay for the costs and expenses of maintaining this action, including reasonable attorneys' fees pursuant to 20 U.S.C. § 1415;

(12) an order granting leave to Plaintiffs to submit a statutory fee application;

(13) an order enforcing and directing compliance as to Plaintiffs' 20 U.S.C. § 1415(j) pendency entitlements; and

(14) an order directing Defendants to comply with the 30-day statutory requirement on a go-forward basis or allow the litigants to bypass the second tier of review until Defendants achieve compliance.

(Cmplt. (Dkt. No. 1) Prayer for Relief)

## IV.   PROCEDURAL HISTORY

### A.   U.A. Related Cases

This is the last of six related IDEA cases before this Court.  See U.A. et al. v. The Board of Education of the City School District of New York City et al., No. 13 Civ. 3077; P.K. and T.K. et al. v. New York City Department of Education et al., No. 13 Civ. 3663; J.F. et al. v. King et al, 13 Civ. 5914; R.S. et al. v. Board of Education of Mahopac Central School District et al., No. 13 Civ. 6115; M.G. et al. v. New York City Department of Education et al., No. 13 Civ.

4455. All of the plaintiffs in these cases alleged improper delays in the issuance of SRO decisions.[6]

Pursuant to Fed. R. Civ. P. 23, the plaintiffs in U.A. moved for class certification. (U.A. et al., No. 13 Civ. 3077 (Dkt. No. 37))  However, in a March 13, 2014 letter, the State Defendants informed the Court that the U.A. Plaintiffs intended to withdraw their motion for class certification, as well as their Second Amended Complaint.  (U.A. et al. v. The Board of Education of the City School District of New York City et al, No. 13 Civ. 3077 (Dkt. No. 85)) Accordingly, the State Defendants asked this Court to conduct a conference to discuss the future of all of the related cases.[7]  (Id.) Defendants asserted that "[the U.A.] Plaintiffs' withdrawal of that motion and pleading fundamentally changes the posture of all of the above related cases." (Id.)  This Court scheduled a conference for April 23, 2014.  See U.A. et al v. The Board of Education of the City School District of New York City et al, No. 13 Civ. 3077 (Dkt. No. 106) (April 23, 2014 Tr.).

In an April 11, 2014 letter, Plaintiffs in the instant action informed the Court that three of the Plaintiffs – E.C., T.G., and R.R. – had not yet received a decision from the OSR.[8] (Dkt. No. 14) As to these Plaintiffs, Plaintiffs' counsel sought "permission to file a motion declaring the impartial hearing officer's decision to be final so as to allow a direct appeal of that decision in federal court."  (Id.)  In an April 10, 2014 letter, the State Defendants requested that – "before th[is] Court enters any order concerning the filing of additional pleadings, responses,

---

[6] Stipulations of voluntary dismissal have been filed in all cases other than the instant case.  See Oct. 1, 2014 Klekman Decl. (Dkt. No. 35), Ex. I (Stipulations of Voluntary Dismissal).

[7] On March 13, 2014, the parties in M.G. et al v. New York City Department of Education et al., No. 13 Civ. 4455, filed a notice of voluntary dismissal.  See Oct. 1, 2014 Klekman Decl. (Dkt. No. 35), Ex. I at 10.

[8] An SRO had issued a decision concerning O.B.'s claims on October 21, 2013.  See Oct. 1, 2014 Klekman Decl. (Dkt. No. 35), Ex. D.

discovery or dispositive motions" – the Court grant the State Defendants additional time to issue

SRO decisions in the remaining appeals.  (April 10, 2014 Ltr. (Dkt. No. 13))  The State

Defendants asserted that the issuance of SRO decisions in those appeals would render Plaintiffs'

claims moot.  (Id.)

**B.**     **April 23, 2014 Conference**

During the April 23, 2014 conference,[9] this Court discussed the briefing schedule

for Plaintiffs' proposed motion:

| | |
|---|---|
| The Court: | When can you get your motion on file? |
| Ms. Libutti: | Two weeks. |
| The Court: | Two weeks?  All right.  Mr. Klekman, when can you get your opposition in? |
| Mr. Klekman: | Your Honor, we also proposed the same thing that we proposed in [the U.A.] case, to allow, before a schedule is imposed on a motion, we be given the same period of May 30th to decide those [remaining] cases as well.  So I would represent instead of setting a schedule, that your Honor direct that that occur. |
| The Court: | All right.  Well, you have heard Mr. Klekman's proposal was one that [plaintiffs' counsel in the U.A. case] was prepared to accept for his two remaining clients who had not received an SRO decision.  The proposal is that the [S]tate [D]efendants be given until May 30th to issue [SRO] decisions with respect to those three remaining [Plaintiffs – E.C., T.G. and R.R. – ] and in the event that those decisions [are] not issued, . . . it is highly likely I would conclude that further resort to the administrative process is futile and it is highly likely that I would issue an order that the IHO decision should be deemed the final administrative decision for the purposes of those three [Plaintiffs]. |

(U.A. et al. v. The Board of Education of the City School District of New York City et al., No.

13 Civ. 3077 (Dkt. No. 106) April 23, 2014 Tr. 12:14-13:10).  When this Court asked Plaintiffs'

_____

[9]  The transcript erroneously indicates that the conference took place on April 22, 2014.  See
U.A. et al v. The Board of Education of the City School District of New York City et al, No. 13
Civ. 3077 (Dkt. No. 106).

counsel whether she agreed with the State Defendants' proposal that the SROs be given until

May 30, 2014 to issue their decisions – with briefing stayed in the interim – Plaintiffs' counsel

responded that she "would be prepared to agree to that [proposal] based upon that

representation." (Id. 13:11-14)  In response, the Court remarked:

> I think that is reasonable because the briefing process is going to take us till then
> anyway.  It seems to me to be reasonable.  As I have said, if for some reason the
> [SRO] decisions are not issued, I have indicated to you where I intend to go.

(Id. 13:15-19)

###   C.   The SRO Decisions

The SROs issued decisions concerning E.C., T.G., and R.R. on or before the May

30, 2014 deadline.[10]  See May 9, 2014 Ltr. (Dkt. No. 16); June 5, 2014 Ltr. (Dkt. No. 17).

As to E.C., the SRO concluded that the IHO had erred in determining that the

school district denied E.C. a FAPE for the 2011-2012 school year, and reversed the portions of

the IHO decision that awarded E.C.'s parents reimbursement for tuition at the Rebecca School.

(E.C. SRO Decision (Dkt. No. 35-3) at 34)

As to T.G., the SRO found that the school district had offered T.G. a FAPE for

the 2011-12 school year.  Accordingly, the parents' claim for private school tuition

reimbursement was denied.   (T.G. SRO Decision (Dkt. No. 35-5) at 26)

As to R.R., the SRO concluded that the school district had offered R.R. a FAPE

for the 2009-10 school year, but not for the 2010-11 school year.  (R.R. SRO Decision (Dkt. No.

35-6) at 38)  Accordingly, the parents' claim for private school tuition reimbursement was

granted as to the 2010-11 school year, but denied as to the 2009-10 school year.  (Id.)

---

[10]   T.G.'s SRO decision is dated April 30, 2014 ( (Dkt. No. 35-5)); R.R.'s SRO decision is dated
May 28, 2014 (Dkt. No. 35-6); and E.C.'s SRO decision is dated May 30, 2014.  (Dkt. No. 35-3)

As to O.B., the SRO reversed the IHO's decision, finding that the school district had offered O.B. a FAPE for the 2011-12 school year. Accordingly, the parents' request for private school tuition reimbursement for the 2011-12 school year was denied. (O.B. SRO decision (Dkt. No. 35-4) at 29)

The parents of O.B. and E.C. appealed the SRO decisions, filing actions in federal court. See Y.D. v. New York City Dep't of Educ., No. 14 Civ. 1137; K.C. et al v. New York City Dep't of Educ., No. 14 Civ. 5686 (E.D.N.Y.). O.B.'s case is still pending, but the parties in E.C.'s case have filed a stipulation of discontinuance. (K.C. et al v. New York City Dep't of Educ., No. 14 Civ. 5686 (Dkt. No. 20)) As to R.R. and T.G., it appears that neither side appealed the SRO's decision.

### D.      Defendants' Claim that this Action is Moot and Plaintiffs' Request for Attorneys' Fees and Costs

In a June 5, 2014 letter, Defendants request that – in light of the issuance of SRO decisions as to all of the Plaintiffs – "each of the above actions be dismissed against the State Defendants as moot." (Dkt. No. 18) In a June 20, 2014 letter, Plaintiffs argue that this action is not moot: ". . . there is nothing to prevent the State Defendants from being in this position in the future. It is already established that this issue is capable of repetition." (Dkt. No. 20)

Pending before the Court is Plaintiffs' motion for an award of attorneys' fees and costs or, in the alternative, for judgment on the pleadings (Dkt. Nos. 27-29), and Defendants' cross-motion for judgment on the pleadings. (Dkt. Nos. 34-36)

## DISCUSSION

### I.   PLAINTIFFS' MOTION FOR AN ATTORNEYS' FEE AWARD

Plaintiffs argue that this action was brought in order "to compel the [State Education Agencies] to timely review and adjudicate the IHO decisions of the four [P]laintiffs." (Pltf. Atty. Fees Br. (Dkt. No. 29) at 18)  Because SROs issued decisions concerning Plaintiffs' claims after this lawsuit was filed, Plaintiffs argue that they are "prevailing parties," and therefore entitled to an award of attorneys' fees under 20 U.S.C. §1415(i)(3)(B).[11]  (Id. at 16) Defendants contend, however, that Plaintiffs do not meet the definition of a "prevailing party" under the governing law of this Circuit.  (Def. Atty. Fees Br. (Dkt. No. 43) at 10-11)

#### A.   Applicable Law

"In the United States, parties are ordinarily required to bear their own attorney's fees – the prevailing party is not entitled to collect from the loser." Buckhannon Bd. and Care Home, Inc. v. W. Virginia Dep't. of Health and Human Res., 532 U.S. 598, 602 (2001) (citation omitted).  "Under this 'American Rule,' [this country] follow[s] 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" Id. (quoting Key Tronic Corp. v. United States, 511 U.S. 809, 819 (1994)).

---

[11] Plaintiffs do not contend that they are "prevailing parties" as a result of outcomes in the SRO decisions.  Indeed, as Defendants point out (Def. Atty. Fees Br. (Dkt. No. 43) at 13), in three of the four SRO decisions the outcomes were not favorable to Plaintiffs.  Moreover, Plaintiffs' briefing makes clear that Plaintiffs now seek an attorneys' fee award in connection with "this action," and not in connection with the preceding administrative proceedings. See, e.g., Pltf. Atty. Fees Br. (Dkt. No. 29) at 7 (asserting that Plaintiffs "are entitled to reasonable attorneys' fees and costs for this action"); Pltf. Reply Br. (Dkt. No. 32) at 6 (same) (emphasis added). Accordingly, Plaintiffs are not currently seeking attorneys' fees related to the administrative proceedings, and their claim for attorneys' fees incurred in connection with the instant action is based on the contention that – regardless of the outcomes in the SRO decisions – the mere issuance of these decisions renders them "prevailing parties" within the meaning of IDEA.

Under IDEA, however, "'the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.'" J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ., 278 F.3d 119, 121 (2d Cir. 2002) (quoting 20 U.S.C. § 1415(i)(3)(B)); see also A.R. ex rel. R.V. v. New York City Dep't. of Educ., 407 F.3d 65, 67 (2d Cir. 2005) ("The IDEA grants courts the discretionary power to 'award reasonable attorneys' fees . . . [to] the prevailing party' '[i]n any action or proceeding brought under' the IDEA.") (quoting 20 U.S.C. § 1415(i)(3)(B)).

Under Buckhannon, "in order to be considered a 'prevailing party,' . . . a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." Roberson v. Giuliani, 346 F.3d 75, 79-80 (2d Cir. 2003) (quoting Buckhannon, 532 U.S. at 603). A plaintiff is "a prevailing party" where plaintiff has "either secure[d] a judgment on the merits or [is] a party to a settlement agreement that is expressly enforced by the court through a consent decree." J.C., 278 F.3d at 123 (citing Buckhannon, 532 U.S. at 603-04). The Second Circuit has recognized, however, that "judicial action other than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur." Roberson, 346 F.3d at 81; see also Mr. L. v. Sloan, 449 F.3d 405, 406 (2d Cir. 2006) ("a 'prevailing party' under federal fee-shifting statutes is one who has achieved a judicially sanctioned change in the legal relationship among the parties, such as a judgment on the merits or a court-ordered consent decree") (emphasis added); Vacchio v. Ashcroft, 404 F.3d 663, 674 (2d Cir. 2005) ("While [judgments on the merits and consent decrees] were cited by the Court as examples of the types of actions that would convey the judicial imprimatur necessary to a fee award, broader language in Buckhannon indicates that these examples are not an exclusive list.").

The <u>Buckhannon</u> standards apply to an application for attorneys' fees under IDEA.  <u>See</u> <u>A.R.</u>, 407 F.3d at 75 ("'the standards used to interpret the term 'prevailing party' under any given fee-shifting statute 'are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party'"; "[t]hose standards include the requirements set forth in <u>Buchhannon</u>"); <u>see also</u> <u>J.C.</u>, 278 F.3d 125 (holding that <u>Buckhannon</u> governs plaintiff's claim for attorneys' fees under IDEA).

**B.      Analysis**

It is undisputed here that – in failing to adjudicate Plaintiffs' appeals within thirty days – Defendants violated federal and state regulations requiring that a "State educational agency" "ensure that not later than 30 days after the receipt of a request for a review (1) [a] final decision is reached in the review; and (2) [a] copy of the decision is mailed to each of the parties."  34 C.F.R. § 300.515(b); <u>see also</u> N.Y. Educ. Law § 4410(7)(d) ("A state review officer of the education department shall review the decision of the [IHO] . . . and render a decision no later than thirty days after the decision of such hearing officer.").  In their Answer, Defendants concede that the "appeal decisions have not been rendered in all cases within the time frame prescribed by federal regulations."  (Answer (Dkt. No. 5) ¶ 5)

It is also undisputed that one of the primary areas of relief sought in the Complaint is an order "direct[ing] Defendants to comply with the 30 day requirements to issue a decision."  (Cmplt. (Dkt. No. 1) at 19)

Accordingly, the principal issue presented is whether – by virtue of (1) the fact that the SRO decisions were issued after this lawsuit was filed; or (2) some action taken by this Court – it is appropriate to find that Plaintiffs are "prevailing parties" within the meaning of 20 U.S.C. §1415(i)(3)(B).

## 1.   The Mere Issuance of the SRO Decisions Does Not <u>Demonstrate that Plaintiffs are "Prevailing Parties"</u>

Plaintiffs' contention that they are entitled to an attorneys' fee award merely because (1) they filed a lawsuit that sought an order requiring SROs to issue decisions in their cases; and (2) the SROs issued decisions in their cases after the lawsuit was filed, constitutes an attempt to apply what is known as the "catalyst theory." In <u>Buckhannon</u>, the Supreme Court explicitly rejected the notion that a plaintiff could obtain fees under a fee-shifting statute merely because plaintiff's lawsuit had provoked the defendant to take action requested in the complaint. <u>Buckhannon</u>, 532 U.S. at 605; <u>see also</u> <u>A.R.</u>, 407 F.3d at 77 ("To permit such a fee award would be to reinstate the use of the now forbidden '"catalyst theory."'"); <u>J.C.</u>, 278 F.3d at 124-25 (holding that <u>Buckhannon</u> had made an attorneys' fee award premised on a "catalyst theory" unsustainable).

The catalyst theory "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." <u>Buckhannon</u>, 532 U.S. at 601. The Supreme Court held "that the 'catalyst theory' is not a permissible basis for the award of attorney's fees under the [Fair Housing Amendments Act.]" <u>Id.</u> at 610. In its decision, the Supreme Court reasoned that

> [a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial <u>imprimatur</u> on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees <u>without</u> a corresponding alteration in the legal relationship of the parties.

<u>Id.</u> at 605. Accordingly, "the term 'prevailing party' [does not] authorize[ ] federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." <u>Id.</u> at 606 (citation omitted).

It is in precisely these circumstances that Plaintiffs seek an attorneys' fee award here. They argue that "the very nature and purpose of this action was to force the SROs to render decisions, and [P]laintiffs 'prevailed' when these four decisions were issued." (Pltf. Atty. Fees Br. (Dkt. No. 29) at 15)  This argument is indistinguishable from the "catalyst theory" rejected in Buckhannon and provides no basis for an attorneys' fee award.

### 2.   This Court Did Not Direct Defendants to Issue SRO Decisions by May 30, 2014

Plaintiffs attempt to distinguish Buckhannon by arguing that this Court ordered Defendants – at the April 23, 2014 conference – to issue SRO decisions by May 30, 2014. Accordingly – Plaintiffs argue – Defendants' conduct in issuing the SRO decisions was not voluntary, and sufficient judicial imprimatur exists to withstand Buckhannon. See Pltf. Atty. Fees Reply Br. (Dkt. No. 32) at 11) (the relief sought "was obtained pursuant to the April 23, 2014 'direction' of [this Court]").  Plaintiffs have misconstrued what transpired at the April 23, 2014 conference, however.

During the April 23, 2014 conference, this Court discussed with the parties a potential briefing schedule for Plaintiffs' proposed motion requesting an order "declaring the [IHOs'] decision[s] to be final [so] as to allow . . . direct appeal of th[ose] decision[s] in federal court." (Pltf. April 11, 2014 Ltr. (Dkt. No. 14); U.A. et al v. The Board of Education of the City School District of New York City et al, No. 13 Civ. 3077 (April 23, 2014 Tr. (Dkt. No. 106) at 12:14-13:10)  As an alternative to a briefing schedule, however, Defendants proposed that they "be given [until] . . . May 30th" to issue SRO decisions as to Plaintiffs E.C., T.G. and R.R. (U.A. et al v. The Board of Education of the City School District of New York City et al, No. 13 Civ. 3077 (April 23, 2014 Tr. (Dkt. No. 106) at 12:18-23)  Plaintiffs agreed to Defendants' proposal, see id. 13:11-14, and the Court adopted it, finding that Defendant's proposal was

"reasonable because the briefing process [would] take . . . until [May 30, 2014] anyway." (Id.

13:15-17)  While this Court warned Defendants that – in the event SRO decisions were not

issued by May 30, 2014 – it would likely conclude that further resort to the administrative

process would be futile (see id. at 12:24-13:10), that warning does not constitute a court order

that SRO decisions be issued by May 30, 2014.  Accordingly, Defendants' issuance of SRO

decisions on or before May 30, 2014 does not reflect a court order or judicial determination, nor

does this Court's actions at the April 23, 2014 conference carry "sufficient judicial imprimatur"

to justify a determination that Plaintiffs are "prevailing parties" for purposes of an attorneys' fee

award.

    A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, cited by

Plaintiffs (Pltf. Atty. Fees Br. (Dkt. No. 29) at 13-15), is not to the contrary.  In A.R., an IHO –

pursuant to a settlement agreement between the parties – issued a "Statement of Agreement and

Order" that "reiterate[d] and affirm[ed] the oral orders and points of agreement" of the parties'

settlement.  A.R., 507 F.3d at 68.  In connection with plaintiffs' motion for an award of

attorneys' fees, the district court found – and the Second Circuit concluded – that plaintiffs were

"prevailing parties," because the parties had "incorporated the terms of the settlement in

dispositive administrative orders," and plaintiffs had thus "obtained an administrative analog of a

consent decree."  Id. at 77-78.

    Unlike in A.R., this Court did not issue an order requiring the Defendants to take

any action.  Although Defendants may have felt pressure to issue the SRO decisions by May 30,

2014 – given the Court's statement that a failure to issue the SRO decisions by May 30, 2014,

might will convince the Court that further resort to the administrative process would be futile –

the Court's statement does not constitute an order that SRO decisions be issued by May 30,

2014, nor does the Court's remark render Defendants' decision to issue SRO decisions by May 30, 2014 involuntary. See Ma v. Chertoff, 547 F.3d 342, 344 (2d Cir. 2008) (rejecting request for an award of attorney's fees where – after the lawsuit was filed – defendants granted plaintiff the relief he sought – namely, an adjustment of plaintiff's status to that of a lawful permanent resident); Doherty v. Thompson, 603 F. Supp. 2d 745, 748 (S.D.N.Y. 2009) (rejecting argument that pressure from court's setting of trial date could constitute a basis for an attorneys' fee award; plaintiff's "argument is too attenuated, as virtually any discovery or discovery order could arguably assert pressure on [a party] to act").[12]

"A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change" to justify granting plaintiff prevailing party status. Buckhannon, 532 U.S. at 605. Nothing that took place at the April 23, 2014 conference carries sufficient judicial imprimatur to convey "prevailing party" status to Plaintiffs. Accordingly, Plaintiffs' motion for an award of attorneys' fees under 20 U.S.C. § 1415(i)(3)(B) will be denied.

## II.    THE CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS

In the alternative, Plaintiffs seek judgment on the pleadings and a ruling that (1) Plaintiffs are prevailing parties in this action; (2) Plaintiffs are entitled to an award of reasonable attorneys' fees and costs; (3) Defendants violated IDEA by not issuing timely decisions concerning appeals regarding Plaintiffs' claims; and (4) requires Defendants to comply with time limits set forth in the IDEA and its implementing regulations in addressing future claims by

---

[12] Plaintiffs argue that Doherty is not on point, because it involves a request for an attorneys' fee award under the Equal Access to Justice Act rather than IDEA. (Pltf. Atty. Fees. Reply Br. (Dkt. No. 32) at 9) The fact that Doherty involves a different fee-shifting provision is irrelevant, however. The Doherty court relied on the Buckhannon standards to determine "prevailing party" status, and those same standards apply here. See A.R., 407 F.3d at 75.

Plaintiffs.  (Pltf. Atty. Fees Br. (Dkt. No. 29) at 21)  Defendants have cross-moved for judgment

on the pleadings, arguing, inter alia, that their issuance of the SRO decisions renders this action

moot.  (Def. JOP Br. (Dkt. No. 36) at 19-30; Def. JOP Reply Br. (Dkt. No. 41) at 7-15)

"Whenever mootness occurs, the court . . . loses jurisdiction over the suit, which therefore must

be dismissed."  Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet, 260

F.3d 114, 118-19 (2d Cir. 2001).  Accordingly, this Court must determine at the outset whether

this action has been rendered moot as a result of Defendants' issuance of the SRO decisions.

### A.    Mootness

The mootness doctrine is rooted in the "case or controversy" requirement of

Article III of the Constitution, which describes "the principle that, at all times, the dispute before

the court must be real and live, not feigned, academic, or conjectural." U.S. Const. art. III, § 2,

cl. 1; Russman, 260 F.3d at 118.  A case is moot, and the federal court is divested of jurisdiction

over it, "when the parties lack a legally cognizable interest in the outcome." Fox v. Bd. of

Trustees of the State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation marks

and citations omitted).  "'A case becomes moot when interim relief or events have eradicated the

effects of the defendant's act or omission, and there is no reasonable expectation that the alleged

violation will recur." F.O. v. New York City Dep't of Educ., 899 F. Supp. 2d 251, 254

(S.D.N.Y. 2012) (quoting Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir.

1998)).  Due to the changing nature of student IEPs from one school year to the next, the

mootness question "is a recurring phenomenon in students' suits to vindicate constitutional rights

associated with the conditions of their education . . . [since, a]s the student's interest evaporates,

so does the requisite case or controversy." Russman, 260 F.3d at 119 (internal citations omitted).

23

The Supreme Court has recognized a limited exception to the mootness doctrine where plaintiff can show that the challenged action is "capable of repetition, yet evading review . . . ." Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911).  This exception "applies only in exceptional situations, . . . where the following two circumstances are simultaneously present:  (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. . . ." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (internal brackets and quotation marks omitted); see also Van Wie v. Pataki, 267 F.3d 109, 113-14 (2d Cir. 2001) ("In the absence of a class action, a controversy is capable of repetition, yet evading review where both of the following two requirements are met:  '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'") (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam)).

**B.**      **Analysis**

In considering Defendants' mootness argument, this Court acknowledges Plaintiffs' contention that "the very nature and purpose of this action was to force the SROs to render decisions. . . ." (Pltf. Atty. Fees. Br. (Dkt. No. 29) at 15)  Given Plaintiffs' characterization of their lawsuit, Defendants' issuance of SRO decisions would appear to have eliminated any case or controversy between Plaintiffs and Defendants.  See Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 91 (2d Cir. 2005) (plaintiffs' challenge to child's IEP – on the grounds that child should not be moved to a different school – rendered moot by defendants' decision to permit the child to remain in the same school, and acknowledgment that the school was the appropriate placement for the child); Stellato on Behalf

of Rebecca v. Bd. of Educ. of Ellenville Cent. Sch. Dist., et al., 842 F. Supp. 1512, 1516

(N.D.N.Y. 1994) (plaintiffs sought declaratory and injunctive relief on the grounds that the

school district unduly delayed child's evaluation process, which determined eligibility for special

education placement; action rendered moot once the evaluation was completed).

   In disputing Defendants' claim of mootness, Plaintiffs' sole argument is that the

"underlying dispute between the parties is 'capable of repetition, yet evading review.'"[13] (Pltf.

Atty. Fees. Br. (Dkt. No. 29) at 17 (quoting Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546

(1976)); see also id. at 18-21; Pltf. Atty. Fees Reply Br. (Dkt. No. 32) at 12)  In resolving

Defendants' mootness claim, this Court must consider (1) whether the challenged action is in

duration too short to be fully litigated; and (2) whether there is a reasonable expectation of

repetition.  See Spencer, 523 U.S. at 17.

### 1.  Duration of Litigation

   "A recurrent dispute will 'evade review' if it could not be entirely litigated before

again becoming moot, including prosecution of appeals as far as the Supreme Court." Russman,

260 F.3d at 119 (citing Honig v. Doe, 484 U.S. 305, 322-23 (1988)) (parenthetical omitted).

   Here, SRO decisions concerning Plaintiffs' claims were issued between 467 and

606 days after the 30-day statutory deadline.  (Pltf. Atty. Fees Br. (Dkt. No. 29) at 18)

Defendants argue that, "[d]epending upon the length of the alleged OSR delay in issuing a

---

[13]  Plaintiffs do not contend that there is any other basis for rejecting Defendants' mootness
argument.  Indeed, Plaintiffs have explicitly abandoned any claim that the untimely SRO
decisions should be deemed null and void.  See Pltf. JOP Br. (Dkt. No. 38) at 18) (stating that
Plaintiffs "are not seeking to declare the decisions issued by the OSR in their cases null and void,
or otherwise disregarded as having been issued late").  Moreover, as to R.R., Plaintiffs concede
that this action is moot for all purposes, because R.R. "is now 23 years old and has aged out of
the protections of the IDEA. . . ."  (Pltf. Atty. Fees Br. (Dkt. No. 29) at 21; see also Honig v.
Doe, 484 U.S. 305, 318 (1988) (case moot as to 24 year-old plaintiff who "is no longer entitled
to the protections and benefits of the [IDEA], which limits eligibility to disabled children
between the ages of 3 and 21") (citing 20 U.S.C. § 1412(2)(B))).

decision, there could be sufficient time to litigate the issue of the delay." (Def. JOP Br. (Dkt. No. 36) at 22) Indeed, the greater the delay, the more likely it is that the issue of delay could be fully litigated before an SRO decision is issued.

While the delays in this case were lengthy, the statutory deadline is exceeded at 31 days. Accordingly, it is conceivable that an SRO decision could be untimely, but that a party would not have sufficient time to litigate the delay issue. See Rastelli v. Warden, Metro. Corr. Ctr., 782 F.2d 17, 20 (2d Cir. 1986) (finding the time period provided by regulation – between 31 and 119 days – insufficient to permit litigation); see also NYCRR tit. 8 § 200.5(k)(2); 34 C.F.R. § 300.515(b). Concluding that it is possible that the issues in this case could not be fully litigated before becoming moot, this Court will assume that Plaintiffs have satisfied the first prong of the "evading review" inquiry, and proceed to consider the second prong: whether Plaintiffs have a reasonable expectation that they will again be subjected to a delay in the issuance of an SRO decision.

## 2.   Reasonable Expectation of Repetition

"To create a reasonable expectation of recurrence, repetition must be more than theoretically possible." Russman, 260 F.3d at 120. Indeed, to be "capable of repetition," repetition must be probable. See Deeper Life Christian Fellowship, Inc. v. Sobol, 948 F.2d 79, 82 (2d Cir. 1991) (noting that, in Honig v. Doe, the Supreme Court considers whether "it was 'reasonable to expect' and 'probable' – not simply possible – that the complaining party would again be subjected to the 'action for which he initially sought relief'"). The Second Circuit has "explained that 'mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence.'" Van Wie, 267 F.3d at 115 (quoting Dennin v. Connecticut Interscholastic Athletic

Conference, Inc., 94 F.3d 96, 101 (2d Cir. 1996) (internal quotation marks and citation omitted)).
Here, Plaintiffs have offered no more than "mere speculation" in arguing that they have a
reasonable expectation of repetition.

Plaintiffs' maintain that (1) if they believe that the school district has not provided
their child with a FAPE, (2) they will initiate an administrative proceeding, and (3) if they are
dissatisfied with an IHO decision, (4) they will appeal to an SRO, and (5) it is possible that the
SRO will not issue a decision on their appeal within thirty days.  Plaintiffs' "reasonable
expectation of repetition" argument is constructed on a series of possibilities and potentialities.
Whether any will come to pass is rank speculation.  Such an accumulation of possibilities and
potentialities is "'simply too speculative and conjectural'" to defeat Defendants' mootness
argument.  See H.B. and T.B. v. Byram Hills Cent. Sch. Dist., No. 14 Civ. 6796 (VB), 2015 WL
5460023, at *5 (S.D.N.Y. July 20, 2015) (concluding that plaintiffs lacked standing to obtain an
injunction barring non-attorneys from serving as IHOs, because they had "not shown a sufficient
likelihood [that] they will request another hearing before an IHO, [and that] the IHO [assigned to
the matter] will not be an attorney") (quoting Shain v. Ellison, 356 F.3d 211, 216 (2d Cir. 2004);
see also F.O. v. New York City Dep't of Educ., 899 F. Supp. 2d 251, 255 (S.D.N.Y. 2012)
(mootness exception not applicable because, inter alia, any determination of the child's right to a
particular school placement in future years was "premature"); M.R. v. S. Orangetown Cent. Sch.
Dist., No. 10 Civ. 1800 (CS), 2011 WL 6307563, at *9 (S.D.N.Y. Dec. 16, 2011) (plaintiff
argued that challenge to school district's classification of child's disability  was not moot – even
though the school year had ended – because the child's classification would be reviewed each
year, making the case capable of repetition; in accepting defendant's mootness claim, court
found that although the "classification issue could theoretically recur, and . . . [plaintiffs] may

file a subsequent lawsuit requesting review of [child's] [disability] classification, . . . that possibility [was] merely speculative").

Moreover, the possibility that Plaintiffs will initiate another administrative proceeding appears remote. In the Complaint, Plaintiffs state that (1) during the 2013-14 school year, E.C. attended a private school recommended and paid for by DOE and NYSED; (2) O.B. attended the Rebecca School for the 2013-14 school year, and the DOE has "offered to settle his case;" and (3) T.G. continued at the Cooke Center for Learning for the 2012-13 school year, pursuant to a settlement with DOE. (Cmplt. (Dkt. No. 1) ¶¶ 46, 53, 60); see Van Wie, 267 F.3d at 115 (plaintiffs asserted that they would face the same dilemma "if and when they again attempt[ed] [the same conduct]"; court concluded that "[t]his assertion amounts to a mere theoretical possibility that the controversy is capable of repetition;" "[s]uch speculation does not establish 'a reasonable expectation' that they will again be subjected to the same dispute") (emphasis in original). As noted earlier, R.R. has aged out of the protections of IDEA. (Pltf. Atty. Fees Br. (Dkt. No. 29) at 21)

Plaintiffs' argument that the resolution of any appeal to an SRO would likely be delayed is likewise speculative. Recent statistics demonstrate that OSR has made significant progress in clearing its backlog. In October 2014, there were 154 appeals pending before SROs, as compared to the 246 in August 2013, when Plaintiffs filed that action. (Nov. 17, 2014 Klekman Decl. (Dkt. No. 39), Ex. B ("OSR Appeal Status")) As of July 2015, there were only 21 cases pending before SROs. See Office of State Review Website, Appeal Status, http://www.sro.nysed.gov/appeal-status.html (last visited August 13, 2015); see also Def. June 3, 2015 Ltr. (Dkt. No. 44), Ex. C. Finally, the U.S. Department of Education has recently determined that NYSED is now in full compliance with the 30-day review requirement (Def.

Aug. 4, 2015 Ltr. (Dkt. No. 50), Ex. A), and accordingly has "approved New York's application for Federal Fiscal Year . . . 2015 funds under [the IDEA.]" (Id.)  In sum, even if Plaintiffs (1) were to conclude that their school district had not offered their child a FAPE; (2) initiated an administrative proceeding; (3) received an unfavorable result from an IHO; and (4) appealed that determination to an SRO, it does not appear probable that resolution of their appeal would be delayed beyond the regulatory deadline.

While it is, of course, possible that a backlog in SRO appeals could re-emerge, that possibility is speculative. See Lillbask, 397 F.3d at 88 (although it was possible that challenged action could recur, "[a] plaintiff must point to something more in the record to lift that possibility beyond the speculative"; because defendants voluntarily agreed not to remove child from school, and acknowledged that the school was appropriate for the child, removal was "not reasonably likely to occur" (emphasis in original)).

Because Plaintiffs have not demonstrated that they have a reasonable expectation that they will again be subjected to a delay in the issuance of an SRO decision, the claims in this action are moot.[14]

---

[14] Honig v. Doe, 484 U.S. 305 (1988), cited by Plaintiffs (Pltf. Atty. Fees Br. (Dkt. No. 29) at 19) is not to the contrary.  In Honig, a school district indefinitely suspended – and proposed expulsion for – two students for violent behavior related to their disability.  Honig, 484 U.S. at 312-13.  The district court found that the indefinite suspension and proposed expulsion constituted a prohibited change in placement, and, inter alia, permanently enjoined the school district from taking any disciplinary action and barred the state from authorizing unilateral placement changes.  Id. at 315-16.  The Supreme Court addressed, as a threshold matter, whether the case was moot in light of the fact that the student no longer faced proposed expulsion or suspension proceedings, nor resided within the school district.  The Court held that the action fell within the mootness exception because of (1) the student's "continued eligibility for educational services"; (2) "the nature of [the] disability[,]" including his history of behavior problems; and (3) [the district's] insistence that all local school districts retain residual authority to exclude disabled children for dangerous conduct[.]"  Id. at 318-19.  The court had "little difficulty concluding" that it was "reasonable to expect that the [student] will again engage in the type of misconduct that precipitated th[e] suit" and "equally probably that . . . [the student] will again be

29

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for an award of attorneys' fees is denied, Plaintiffs' motion for judgment on the pleadings is denied, and Defendants' motion for judgment on the pleadings is granted. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 27, 34) and to close this case.

Dated: New York, New York
      September 30, 2015             SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

subjected to the same unilateral school action[.]" Id. at 319-21. The court believed that, "were it not for the injunction barring . . . unilateral action, [the] [student] would be faced with a real and substantial threat of such action[.]" Id. at 322. The "unique circumstances" of Honig, id. at 321, are not present here, and the risk that Plaintiffs will again face significant delays in obtaining a decision from an SRO appears highly attenuated.

Heldman on Behalf of T.H. v. Sobol, 962 F.2d 148 (2d Cir. 1992), also cited by Plaintiffs (see Pltf. Atty. Fees Br. (Dkt. No. 29) at 20), is not to the contrary. In Heldman, a father challenged the manner in which hearing officers are selected in New York, arguing that his son had been denied an impartial review of his IEP. Heldman, 962 F.2d at 153. In New York, the boards of education are responsible for appointing hearing officers to conduct reviews of IEPs and make recommendations to the board. Id. at 152 (citing N.Y. Educ. Law § 4404(1); NYCRR tit. 8 § 200.5(c)(1). The district court found that Heldman's case was not moot because "the threat of future denial of an impartial hearing is sufficiently real." Heldman, 962 F.2d at 157. The district court also analyzed the case under the "capable of repetition yet evading review" standard and found that it satisfied this exception to mootness because, "if [the child] were to return to school, there is a likelihood that a dispute would arise concerning his IEP, [and the school board] would select a hearing officer pursuant to NYCRR tit. 8 § 200.5(c)(1), giving rise to the same alleged violation of [the child's] IDEA-rights." Id. at 157 n.9. Unlike in Heldman, where the challenged action – the procedure for selecting hearing officers – was codified in New York's education law – here, the state remedied the challenged action – the delay in appeals – by clearing the backlog, which makes the likelihood of repetition only speculative. (Def. Aug. 4, 2015 Ltr. (Dkt. No. 50), Ex. A); (Def. June 3, 2015 Ltr. (Dkt. No. 44), Ex. C); see also Office of State Review Website, Appeal Status, http://www.sro.nysed.gov/appeal-status.html (last visited August 13, 2015).